STEVEN A. GROODE, Bar No. 210500
sgroode@littler.com
SEVAG M. SHIRVANIAN, Bar No. 278540
sshirvanian@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553.0308
Facsimile: 310.553.5583

Attorneys for Defendants
MASTEC NETWORK SOLUTIONS, LLC,
MASTEC SERVICES COMPANY, INC.,
MASTEC NETWORK SOLUTIONS, INC., AND
WESTOWER COMMUNICATIONS, LLC
(FORMERLY KNOWN AS "WESTOWER
COMMUNICATIONS, INC.")

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION

| | |
|---|---|
| CESAR ZEPEDA,<br><br>        Plaintiff,<br><br>    v.<br><br>MASTEC NETWORK SOLUTIONS, LLC, a Florida limited liability company; MASTEC SERVICES COMPANY, INC., a Florida corporation; MASTEC NETWORK SOLUTIONS, INC. a Florida corporation; and WESTOWER COMMUNICATIONS INC., a Delaware corporation; and DOES 1-25, inclusive,<br><br>        Defendants. | Case No. 5:18-cv-1650<br><br>**DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1332(a)(1), 1441, 1446]**<br><br>Complaint filed: July 3, 2018<br>(Riverside County Superior Court Case No. RIC 1813523) |

Firmwide:156243825.4 097125.1002

TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF CESAR ZEPEDA AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Mastec Network Solutions, LLC ("MNS LLC"), Mastec Services Company, Inc. ("MSC"), Mastec Network Solutions, Inc. ("MNS Inc."), and Westower Communications, LLC (formerly known as "Westower Communications, Inc.") ("Westower LLC") (collectively, "Defendants") hereby remove the above-entitled action, Case No. RIC 1813523 from the Superior Court of the State of California, County of Riverside, to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. §§ 1441 and 1446.

This Notice is based upon the original jurisdiction of the United States District Court over the parties under 28 U.S.C. § 1332 based upon complete diversity of citizenship.

Defendant makes the following allegations in support of their Notice of Removal:[1]

## I.
## STATEMENT OF JURISDICTION AND VENUE

1. This action is a civil action over which this Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. section 1332(a), and is one which may be removed to this Court by Defendants pursuant to 28 U.S.C. section 1441(b) because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below. 28 U.S.C. §§ 1332, 1441(a), and 1146(b).

---

[1] "To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547 (2014), *quoting* 28 U. S. C. §1446(a). "A statement 'short and plain' need not contain evidentiary submissions." *See Dart* at 547.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002

2. Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c)(2), 1391 and 1446.

**II.**
**PLEADINGS, PROCESS AND ORDERS**

3. This lawsuit arises out of Plaintiff Cesar Zepeda's ("Plaintiff") alleged employment with Defendants.

4. On July 3, 2018, Plaintiff filed an unverified complaint in the Superior Court of the State of California, County of Riverside, entitled *Cesar Zepeda v. MASTEC NETWORK SOLUTIONS, LLC, a Florida limited liability company; MASTEC SERVICES COMPANY, INC., a Florida corporation; MASTEC NETWORK SOLUTIONS, INC., a Florida corporation; WESTOWER COMMUNICATIONS INC., a Delaware corporation; and DOES 1 through 25, inclusive*, designated as Case No. RIC1813523 (herein referred to as the "Complaint"). The Complaint asserts the following nine purported causes of action: (1) Failure to Pay Wages Owed; (2) Failure to Pay Overtime; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Breaks; (5) Failure to Provide Correct or Itemized Pay Stubs; (6) Waiting Time Penalties; (7) Failure to Reimburse Pursuant to Labor Code Section 2802; (8) Unfair Competition (Violation of Business and Professions Code § 17200 et seq.); and (9) Retaliation/Wrongful Termination in Violation of Public Policy (*Tameny* and *Lujan* Cases). A true and correct copy of the Summons, Complaint and attachments, and Civil Case Cover Sheet are attached to this Notice collectively as **Exhibit "A"** pursuant to 28 U.S.C. §1446(a) (hereafter "Compl., Exh. A").

5. On July 10, 2018, Plaintiff served the Complaint with its attachments on defendant MNS LLC through its agent for service of process. As of the date of the filing of this Notice of Removal, the remaining defendants have not been served.

6. On August 7, 2018, Defendants filed an Answer to Plaintiff's Complaint pursuant to Cal. Code of Civ. Proc. § 431.30 in the Superior Court of California, County of Riverside. Pursuant to 28 U.S.C. §1446(a), a true and correct copy of the

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002
3.

Answer is attached hereto as **Exhibit "B"**.

7.    To the best of Defendants' knowledge, no further documents from the state court action have been filed by Plaintiff. Nor have any other documents been filed in the state court action by Defendants. The attachments thereby satisfy the requirements of 28 U.S.C. § 1446(a).

8.    The Complaint also names as defendants "DOES 1 through 25." Defendants are informed and believe, and on that basis allege, that none of the fictitiously-named defendants have been served with a copy of the Summons and Complaint. Therefore, the fictitiously-named defendants are not parties to the above-captioned action and need not consent to removal. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980); 28 U.S.C. section 1441(a).

### III.
### NOTICE TO STATE COURT AND PLAINTIFF'S COUNSEL

9.    Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of the removal will be given by the undersigned to Plaintiff's Counsel of Record and a copy of this Notice of Removal will be filed with the Clerk of the Superior Court for the State of California for the County of Riverside as required by 28 U.S.C. §1446(d).

### IV.
### TIMELINESS OF REMOVAL

10.    This Notice of Removal is filed within 30 days after the initial receipt by defendant MNS LLC of a copy of Plaintiff's Complaint in accordance with 28 U.S.C. § 1446(b) and Rule 6(a)(1) of the Federal Rules of Civil Procedure. The other defendants have not been served as of the date of this Notice of Removal. Nonetheless, this Notice of Removal is being filed by all defendants and all defendants have appeared and answered the state court Complaint.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002                    4.

# V.
# DIVERSITY OF CITIZENSHIP EXISTS

11.     The Court has jurisdiction over this action because there is complete diversity of citizenship between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.  28 U.S.C. § 1332(a).

12.     Diversity of citizenship exists so long as no plaintiff is the citizen of the same state as any defendant at the time the action was filed and at the time of removal. *See Awasthi v. Infosys Techs., Ltd.*, 2012 U.S. Dist. LEXIS 57824 at *22 (N.D. Cal. 2010); *see also United Food Local 919 v. Centermark Properties*, 30 F. 2d 298, 301 (2nd Cir. 1994).

13.     For purposes of removal, the citizenship of "Doe Defendants" are disregarded and only named defendants are considered.  28 U.S.C. § 1441(a); *see Newcombe v. Adolf Coors Co.*, 157 F. 3d 686 (9th Cir. 1998).

## A.     Plaintiff is a Citizen of California

14.     Citizenship of a natural person is established by domicile.  28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled).  A person's domicile is established by physical presence and intent to remain indefinitely. *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986); *State Farm Mutual Auto Insurance Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).  Moreover, "[o]nce an individual has established his state of citizenship, he remains a citizen of that state until he legally acquires a new state of citizenship." *Altimore v. Mount Mercy College*, 420 F.3d 763, 769 (8th Cir. 2005).  A person's old domicile is not lost until a new one is acquired. *Barber v. Varleta*, 199 F.2d 419, 423 (9th Cir. 1952).

15.     Here, although Plaintiff omitted any explicit reference in his Complaint to his residence or citizenship, Plaintiff is a citizen of the State of California.  In this regard:

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002          5.

(a) Plaintiff admits that at all relevant times, he was employed in Riverside County, California. *See* Compl.¶ 2, Exh. A.

(b) Plaintiff's address of record with one or more of Defendants was in California.

(c) Moreover, based on information provided by Plaintiff to one or more of Defendants during his employment application process, Defendants are informed and believe that Plaintiff was employed in California from 2003 to 2008 when he commenced employment with Defendants.

(d) Defendants are informed and believe that Plaintiff has lived in California continuously since at least 2003.

(e) Defendants are unaware of any effort by Plaintiff to establish his citizenship outside of the State of California.

Accordingly, Plaintiff is a citizen of the State of California.

**B.    No Defendant is a Citizen of California**

16.    For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The United States Supreme Court has confirmed that to determine a corporation's principal place of business, a court must apply the "nerve center" test. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). In relevant part, the Court explained, as follows:

> We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002          6.

coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id.*, at 1041-42.

17. The "nerve center" test of a corporation's principal place of business looks to the place in which the corporation's executives and administrative functions are located. *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862 (S.D.N.Y. 1959) (corporation's principal place of business was New York, where its management was located, rather than Connecticut where most of its manufacturing was done); see also *Diaz-Rodriguez v. Pep Boys Corp.*, 410 F. 3d 56, 60 (1st Cir. 2005) (nerve center test governs where corporation has "complex" and "far flung" activities).

18. Plaintiff has correctly pled that Defendants MSC and MNS Inc. are incorporated in the State of Florida. Moreover, the principal place of business and headquarters for each are in Florida, because their executive, operational and administrative offices and functions are located in Florida. Accordingly, citizenship of MSC and MNS Inc. is in Florida. *See Breitman v. May Co.*, 37 F.3d 562, 564 (9th Cir. 1994) (corporation is citizen of state in which its corporate headquarters are located and where its executive and administrative functions are performed).

19. For diversity jurisdiction, the Ninth Circuit looks to the citizenship of each of the limited liability company's members for purposes of its citizenship. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

20. Plaintiff has correctly pled that MNS LLC is a Florida limited liability company. The sole member of MNS LLC is Mastec, Inc. Mastec, Inc. is incorporated in the State of Florida and its principal place of business and headquarters are in Florida, because its executive, operational and administrative offices and functions are

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002                    7.

located in Florida.  Accordingly, MNS LLC's citizenship is in Florida.  *See Breitman at* 564.

21.    Plaintiff has pled that "Westower Communications, Inc." is incorporated in the State of Delaware.  Westower Communications, Inc. has merged into Westower LLC, a limited liability company.  Westower LLC's sole member is MasTec Network Solutions, LLC, a Florida limited liability company, whose sole member is Mastec, Inc.   Mastec, Inc. is incorporated in the State of Florida and its principal place of business and headquarters are in Florida, because its executive, operational and administrative offices and functions are located in Florida.  Accordingly, citizenship of Westower LLC is in Florida.  *See Breitman at* 564.

22.    As set forth above, complete diversity of citizenship exists between Plaintiff and Defendants.

### VI.
### THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

23.    For purposes of determining whether the minimum amount in controversy has been satisfied, the Court must presume that Plaintiff will prevail on each and every one of his claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  Defendants need only establish by a preponderance of evidence that Plaintiff's claims exceed the jurisdictional minimum.  *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  By demonstrating that the actual amount in controversy placed at issue by Plaintiff exceeds the $75,000 threshold, Defendants do not concede the validity of Plaintiff's claims, the legal bases for the damages calculations, or the likelihood that Plaintiff will recover anything.

24.    The U.S. Supreme Court has affirmed that the notice of removal need only contain a "short and plain statement of the grounds for removal."  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 551, 551, 190 L. Ed. 2d 495 (Dec. 15,

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002                8.

2014) (*citing* 28 U. S. C. §1446(a)).  Moreover, Defendants need not submit evidence to support a notice of removal. *Id.* at 553.  Defendants need only plausibly allege that the amount in controversy exceeds $75,000.  *Id.* ("the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.")  However, even if an evidentiary showing were required, a defendant only need to show by a preponderance of the evidence that the amount-in-controversy requirement has been met.  *Id.* at 554.  Importantly, as the Court in *Dart* instructed, that there is no anti-removal presumption. *Id.*  While the number and types of Plaintiff's claims clearly demonstrate that the amount in controversy is exceeded, out of an abundance of caution, Defendants provide greater detail, *infra*, that clearly establishes that the amount in controversy placed at issue by Plaintiff exceeds $75,000.

25.    Where a complaint is silent as to the amount in controversy, a defendant can establish the amount in controversy by the allegations in a complaint, or by setting forth facts in the notice of removal that demonstrate that the amount in controversy "more likely than not" exceeds $75,000.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F. 2d 564, 567 (9th Cir. 1992).  Although the Complaint does not allege a specific amount in controversy, it can be ascertained that the amount in controversy in this action does, in fact, exceed $75,000, exclusive of interest and costs.

26.    Plaintiff filed the Complaint in state court as an unlimited jurisdiction matter, alleging damages in excess the jurisdictional minimum of that court, which is $25,000. *See* Compl.¶ 7, Exh. A.

27.    Defendants deny the validity and merits of the entirety of Plaintiff's alleged claims, the legal theories upon which they are ostensibly based and the allegations for monetary and other relief requested.  However, for the purposes of removal only, and without conceding that Plaintiff is entitled to any damages or penalties whatsoever, Plaintiff's aggregated claims establish that an amount in

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002           9.

controversy well in excess of the jurisdiction minimum for this removal of $75,000.

### A.    Plaintiff's Wrongful Termination Claim Alone Seeks Over $75,000 in Economic Damages

28.    The Ninth Circuit recently held that "the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018). Here, Plaintiff seeks damages on his wrongful termination for, but not limited to: past and future economic loss, including lost earnings; emotional pain and humiliation; punitive damages; and, attorneys' fees. *See* Compl.¶¶ 75, 76, Prayer for Relief ¶¶ 3,5,6 Exh. A.[2]

#### a.    Lost Earnings

29.    Plaintiff was compensated on an hourly basis and paid weekly. Plaintiff's final straight hourly rate at termination was $31.68 per hour.  He was terminated July 14, 2017 in a company reduction in force.  Plaintiff typically worked at least 40 hours per workweek.

30.    There were approximately 56 workweeks between July 14, 2017, the date of Plaintiff's termination, and the filing of this Notice of Removal.  Assuming, *arguendo*, that Plaintiff can recover economic damages for a wrongful termination for this time period, the amount of back pay in controversy for this period, based on a 40 hour workweek, would total at least **$70,963.20**.[3]

31.    Furthermore, estimating that a trial would not be for six months, it would add an additional 26 workweeks of recoverable back pay.  As such, the amount of back pay in controversy between the date of removal and trial would total at least an

---

[2] Plaintiff seeks "lost income, denial of wages, denial of Plaintiff's right to exercise all labor laws to which Plaintiff, as an hourly, non-exempt employee was entitled to under California law, consequential damages, lost future income, lost hours of employment, pain, suffering, humiliation, embarrassment, and/or shame according to proof at the time of trial." *See* Compl.¶¶ 75, Exh. A.  In this analysis, Defendants can establish the required amount in controversy without analyzing each alleged damage.
[3] 56 workweeks x 40 hours x $31.68 = $70,963.20

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002

additional **$32,947.20**.[4]

32.    Therefore the total amount of back pay in controversy in this case is at least **$103,910.40.**[5]

33.    In addition, to the extent Plaintiff seeks future damages or front pay as a result of the alleged wrongs by Defendants, such awards in California often span several years. *See Smith v. Brown-Forman Distillers Corp.*, 196 Cal. App. 3d 503, 518 (1989) (front pay until mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus.*, 55 Cal. App. 3d 91, 92 (1976) (four years); *Drzewiecki v. H & R Block, Inc.*, 24 Cal. App. 3d 695, 705 (1972) (ten years). Even conservatively estimating that Plaintiff seeks front pay damages of one year, the amount of future wages in controversy in this case would total at least an additional **$65,894.40**.[6]

34.    Thus, it may reasonably be estimated that just one of Plaintiff's nine alleged claims involve possible economic damages (*i.e.*, back pay and front pay) that alone total at least **$169,804.80,** more than double the jurisdictional requirement.[7]

**b.    Emotional Distress**

35.    Plaintiff also seeks emotional distress damages. *See* Compl., at ¶ 75, Prayer for Relief ¶ 3, Exh. A. Emotional distress damages may be considered in calculating the amount in controversy even if not clearly pleaded in the complaint. *See Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002); *see also Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995). Although Defendants dispute that Plaintiff is entitled to any such award, plaintiffs in employment cases have been awarded substantial sums for emotional distress. *See, e.g., Gardenhire v. Housing Authority of the City of Los Angeles*, 85 Cal. App. 4th 236, 240-241 (2002) (affirming judgment, including jury award of $1.3 million in emotional distress damages for wrongful termination in violation of public policy

---

[4] 26 workweeks x 40 hours x $31.68 = $32,947.20
[5] $70,963.20 + $32,947.20 = $103,910.40
[6] 52 workweeks x 40 hours x $31.68 = $65,894.40
[7] $103,910.40 + $65,894.40 = $169,804.80

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002            11.

claim); *Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001), *cert. denied*, 535 U.S. 1018 (2002) (award of $30,000), and *Redfield v. Insurance Co. of N. Am.*, 940 F.2d 542 (9th Cir. 1991), *overruled on other grounds*, *Dotson v. United States*, 87 F.3d 682 (5th Cir. 1996) (award of $25,000).

36.    In *Kroske v. U.S. Bank Corp.*, 432 F.3d 976 (9th Cir. 2005), *cert denied*, 549 U.S. 822 (2006), the Ninth Circuit upheld the lower court's finding that the amount in controversy had been established.  In reaching its holding, the Ninth Circuit reasoned that the plaintiff's "emotional distress damages would add at least an additional $25,000 to her claim" where she had only $55,000 in lost wages, thus satisfying the amount in controversy requirement "even without including a potential award of attorney's fees." *Id.* at 980.  A similar result is compelled here, as Plaintiff expressly seeks damages for emotional distress and a comparable or larger amount of lost wages is at issue.  Thus, based on *Kroske* and other employment cases, the emotional distress component of Plaintiff's claims adds at least **$25,000** to the amount in controversy.

### c.    Punitive Damages

37.    Punitive damages are included in calculating the amount in controversy. *See Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F. 2d 785, 787 (9th Cir. 1963); *see also Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 2003).

38.    The Plaintiff's potential punitive damages award alone against Defendants satisfies the amount in controversy for this removal.  California law does not provide any specific monetary limit on the amount of punitive damages which may be awarded under Civil Code section 3294, and the proper amount of punitive damages under California law is based on the reprehensibility of defendant's misdeeds, the ratio between compensatory and punitive damages, and ratio between damages and defendant's net worth.  *See Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357 (9th Cir. 1994).  Indeed, some courts have recognized that an award for punitive damages can be significant, and that in some cases, a punitive award itself could

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002                12.

establish the amount in controversy. *See e.g.*, *Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334 (S.D. Iowa 1994) (concluding in a discrimination and wrongful termination case that the purpose of punitive damages is to capture the defendant's attention and to deter others from similar conduct and, thus, the plaintiff's claim for punitive damages could alone exceed the jurisdictional minimum).

39.    In *State Farm vs. Campbell*, 538 U.S. 408, 425, 123 S.Ct. 1513, 1524 (2003), the Supreme Court ruled that a single-digit ratio (i.e., no more than nine-to-one) was appropriate when issuing an award of punitive damages. Looking to how courts and juries have valued similar claims, Plaintiff's request for punitive damages alone puts a range of $70,963 to $638,667 in controversy (estimating a range of a 1 to 9 ratio for award of punitive damages relative to alleged wage loss to date). For example, in *Aucina, supra*, the District Court held that for purposes of diversity jurisdiction, an employer showed by a preponderance of the evidence that the amount in controversy exceeded $50,000 [the jurisdictional amount at the time] in an employment discrimination and wrongful discharge action in which the plaintiff sought compensatory and punitive damages, attorneys' fees, costs, and interest. In reaching its holding, the Court reasoned that the employer was a Fortune 500 company and, because the purpose of punitive damages was to capture the employer's attention and deter others from similar conduct, it was apparent that the plaintiff's claim for punitive damages alone might exceed $50,000 and additionally, the plaintiff also claimed damages for lost wages, lost benefits, and mental anguish.

40.    Accordingly, even if the Court applies a modest one-to-one ratio of punitive damages to lost income in this case, Plaintiff's request for punitive damages alone puts in controversy an additional **$70,963** in damages.

### d.    Attorneys' Fees

41.    Attorneys' fees should be included in calculating the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (prayer for attorneys' fees included in determining the amount in controversy where

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002          13.

potentially recoverable by statute); *see Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) (court may estimate the amount of reasonable attorneys' fees likely to be recovered by a plaintiff if she were to prevail in determining whether amount in controversy exceeds $75,000)

42.    At an assumed rate of $300 per hour, Plaintiff's counsel would need to spend only 250 hours of attorney time (a conservative estimate of time spent through trial) to incur $75,000 in reasonable attorneys' fees (250 x $300 = $75,000). Moreover, attorneys' fees awards in employment matters often exceed $75,000. *See, Flannery v. Prentice*, 26 Cal.4th 572 (2001) (California Supreme Court upheld an award of attorneys' fees under Fair Employment and Housing Act ("FEHA") for $891,042); *see also Rivera v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 58610, *12-13 (N.D. Cal. 2008) (on denying motion for remand, the court stated that employment discrimination claims require a great deal of preparation and effort to maintain and at plaintiff's attorneys' claimed rate of $400 an hour, fees will likely become substantial) *citing to Simmons v. PCR Tech.,* 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (noting that in the Court's twenty-plus years' experience, attorneys' fees in individual discrimination cases often exceed the damages and found the jurisdictional maximum was satisfied); *Akers v. County of San Diego*, 95 Cal. App.4th 1441 (lower court awarded $249,349 in attorneys' fees in wrongful termination in violation of public policy and discrimination case); *Hackmon v. City of Los Angeles*, 2001 WL 1860540) (Cal. Superior ($114,484 awarded in discrimination case brought under the FEHA); *Kohn v. County of Los Angeles*, 2001 WL 1720226 (awarding $161,700 in attorneys' fees in FEHA discrimination case) (Cal. Superior); *Heiserman v. Lemon Grove Sch. Dist.*, 1998 WL 1547897 (Unknown State Ct.) ($96,000 in fees awarded in failure to accommodate case).

43.    Thus, an attorneys' fees award in this case could easily reach or exceed **$75,000**.

44.    After compiling damages for only lost wages (**$169,804 or more**),

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002                    14.

emotional distress damages (**$25,000 or more**), punitive damages (**$70,963 or more**), and an award for Plaintiff's attorneys' fees, it is more likely than not that Plaintiff would recover in excess of $75,000 in this matter. This does not even consider any of the relief Plaintiff seeks pursuant to his first through seventh causes of action under the Labor Code and related eighth cause of action for alleged unfair business practices, all of which simply serves to increase the amount in controversy.[8] Accordingly, Defendants have carried the burden of demonstrating by a preponderance of the evidence that the amount in controversy in this matter exceeds the jurisdictional minimum.

## VII.
## NOTICE TO PLAINTIFF AND STATE COURT

45. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of the removal will be given by the undersigned to counsel for Plaintiff, and a copy of this Notice of Removal will be filed with the Clerk of the Superior Court for the State of California for the County of Los Angeles.

Dated:   August 8, 2018

Respectfully submitted,

LITTLER MENDELSON, P.C.

/s/ *Steven A. Groode*
STEVEN A. GROODE
SEVAG M. SHIRVANIAN
Attorneys for Defendants
MASTEC NETWORK SOLUTIONS, LLC; MASTEC SERVICES COMPANY, INC.; MASTEC NETWORK SOLUTIONS, INC.; AND WESTOWER COMMUNICATIONS, LLC (FORMERLY KNOWN AS "WESTOWER COMMUNICATIONS, INC.")

---

[8] As just one simple example, Plaintiff's sixth cause of action for waiting time penalties under Labor Code section 203 alone places another $7,603.20 in controversy. (Calculated as follows: $31.68 per hour x 8 hours/day x 30 days).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:156243825.4 097125.1002

15.